# EXHIBIT 1

### SUPREME COURT OF THE STATE OF NEW YORK
### COUNTY OF NEW YORK

|  |  |
|---|---|
| Cassandra Thompson, individually and on behalf of all others similarly situated, | **SUMMONS** |
| Plaintiff, |  |
| -against- | Index No. Purchased on   September 17, 2023 |
| Schwan's Consumer Brands, Inc., |  |
| Defendant |  |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

Dated:   September 17, 2023

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

Address

Plaintiff   50 Amsterdam Ave New York NY 10023

Defendant   n/a

Plaintiff designates   New York County as place of trial. The basis is: [**SELECT ONE**]

Venue

☒   Plaintiff's Residence in  New York County

☐   n/a

☐   Other

## SUPREME COURT OF STATE OF NEW YORK
## COUNTY OF NEW YORK

CASSANDRA THOMPSON,
individually and on behalf of all others
similarly situated,

Plaintiff,

- against -

SCHWAN'S CONSUMER BRANDS,
INC.,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff Cassandra Thompson ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Schwan's Consumer Brands, Inc. ("Defendant"), sells frozen chocolate crème pie represented as having "No Preservatives" under the Edwards brand ("Product").




Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 4 of 24

2.    However, "No Preservatives" is false and misleading because the product contains chemical preservative ingredients which perform preservative functions in the Product.

## I.   PRESERVATIVES

3.    Preservatives are ingredients added to food that are capable of and tend to prevent or slow its deterioration.

4.    This includes maintaining or improving safety, freshness, nutritional value, taste, texture, and appearance.

5.    These functions can be achieved through natural preservatives like sugar, salt, vinegar, and spices, or artificial preservatives like phosphate salts, polysorbates, ascorbic acid, citric acid, benzoate of soda, salicylic acid, and sulfur dioxide. 21 C.F.R. § 101.22(a)(5).

## II.   LEGAL BACKGROUND

6.    In response to consumer outcry based on an unregulated environment where dangerous substances were added to the nation's food supply, the Pure Food and Drug Act of 1906 ("PFDA") required disclosing the presence of chemical preservatives to purchasers.

7.    These requirements were enhanced when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938, which set standards and regulations for what companies were required to tell the public about food and

2

Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 5 of 24

beverages they sell. 21 U.S.C. § 301 *et seq*.; 21 C.F.R. Parts 100, 101 and 102.

8.   These laws were adopted by this State in their entirety through its Agriculture and Markets Law ("AGM") and accompanying regulations, so its citizens could make informed decisions about the foods they buy. AGM § 198 *et seq.*; 1 NYCRR § 259.1(a)(2)-(4) (adopting 21 C.F.R. Parts 100, 101 and 102).

9.   These rules are based on the premise that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as composition, taste and the use of certain types of ingredients.

10.   One way a food can be considered "misbranded" if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); AGM § 201(1).

11.   Another way a product can be considered "misbranded" is if it bears or contains any chemical preservative, unless it bears labeling stating that fact. 21 U.S.C. § 343(k); AGM § 201(11).

12.   Federal and State regulations require that where a food contains "any chemical that, when added to food, tends to prevent or retard deterioration," "A statement of [that] chemical preservative shall be placed on the food [] as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use." 21 U.S.C. § 343(k), 21 C.F.R. § 101.22(a)(5) and 21 C.F.R. § 101.22(c); 1 NYCRR § 259.1(a)(3).

3

13.   The law requires that "[A] food to which a chemical preservative(s) is added shall [] bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'." 21 C.F.R. § 101.22(j).

## III. PRESENCE OF CHEMICAL PRESERVATIVES REMAINS IMPORTANT TO CONSUMERS

14.   Even though the PFDA and FFDCA were enacted over a century ago, consumer opposition to chemical preservatives is just as strong today.

15.   This is confirmed by research from Nielsen and Mintel indicating that almost ninety percent of Americans are willing to pay more for healthier foods, understood as those without synthetic preservatives.

16.   These findings are consistent with surveys showing the public wants to know more about the ingredients in the food and beverages they consume and will consistently pay higher amounts for products which tell them this.

17.   This is especially important when it comes to the use of chemicals and additives, according to the International Food Information Council ("IFIC").

18.   One poll showed that almost all consumers rated chemicals in food among their top three concerns, higher than foodborne illness from bacteria.

19.   Slightly more than half of Americans believe additives pose a serious health risk.

4

20.  This behavior makes sense, as studies have confirmed negative health effects linked with consumption of ultra-processed foods ("UPF") laden with chemical additives like synthetic preservatives.

21.  According to one observer, "Our foods are laden with additives that are meant to enhance flavor, color and shelf life that research has shown are either bad for people to consume or inconclusively so."

22.  Giustra echoed consumer concern that "Packaged and processed foods are scary [because] It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm."

23.  The FDA even recommends that consumers who seek to buy foods without chemical preservatives review the ingredients to see if they contain ingredients phosphate salts, among other chemical additives, because companies are required to disclose their presence.

## IV.  "NO PRESERVATIVES" IS MISLEADING

24.  The representation that the Product contains "No Preservatives" is false, deceptive, and misleading, because the ingredients include sodium pyrophosphate and sodium tripolyphosphate ("phosphate salt preservatives") and polysorbate 60, polysorbate 65, and polysorbate 80 ("polysorbate preservatives"), chemical substances (the "synthetic preservatives") which perform preservative functions in the food.

5

**INGREDIENTS:** SUGAR, WATER, ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), REDUCED FAT SWEETENED CONDENSED MILK (MILK, SKIM MILK, SUGAR, VITAMIN A PALMITATE), SHORTENING (PALM OIL, SOYBEAN OIL, AND COCONUT OIL), HYDROGENATED PALM KERNEL OIL, MILK, CREAM CHEESE (PASTEURIZED MILK AND CREAM, CHEESE CULTURE), CORN SYRUP, COCOA (PROCESSED WITH ALKALI), CONTAINS 2% OR LESS OF: NATURAL FLAVOR, BAKING SODA, CHOCOLATE, SODIUM CASEINATE, SALT, DEXTROSE, COCOA, MONO-AND DIGLYCERIDES, POLYSORBATE 60, CAROB BEAN GUM, SORBITAN MONOSTEARATE, CHEESE CULTURE, MODIFIED FOOD STARCH, XANTHAN GUM, CARBOHYDRATE GUM, GUAR GUM, COCOA BUTTER, SOY LECITHIN, MALIC ACID, SODIUM PYROPHOSPHATE, MILKFAT, POLYSORBATE 65, SODIUM TRIPOLYPHOSPHATE, CARRAGEENAN, POLYSORBATE 80, COLORED WITH BETA CAROTENE AND APOCAROTENAL.

6

25.   Sodium pyrophosphate[1] and sodium tripolyphosphate ("STPP") are categorized as phosphate salts.

26.   These are produced by chemical reactions involving the neutralization of phosphoric acid, a synthetic pollutant. *See* 40 C.F.R. § 116.4 (identifying phosphoric acid as a hazardous substance).[2]

27.   Sodium pyrophosphate is classified by the FDA as a sequestrant. 21 C.F.R. § 182.6787.

28.   A sequestrant is a food additive which improves the quality and stability of foods.

29.   A sequestrant forms chelate complexes with polyvalent metal ions, especially copper, iron and nickel.

30.   This can prevent the oxidation of the fats in the food.

31.   Sequestrants are therefore a type of preservative.

32.   SAPP is added to protect dairy proteins from heat dehydration, stabilize fat emulsions, and to buffer the Product to preserve freshness.

33.   Sequestrants work primarily as preservatives, helping to extend the shelf life of food products and keeping these fresh for consumption.

34.   Sodium tripolyphosphate is classified by the FDA as a Multiple Purpose

---

[1] Also known as Sodium acid pyrophosphate (SAPP)

[2] The functionality of disodium phosphate, sodium pyrophosphate and sodium tripolyphosphate is identical across the varieties of pies.

7

GRAS Food Substance. 21 C.F.R. § 182.1810.

35.    The FDA has warned companies using STPP and even required its declaration as a preservative on the ingredient list followed by its function, i.e., to preserve moisture.

36.    The polysorbates included in the Product, polysorbate 60, polysorbate 65, polysorbate 80, are multipurpose additives. 21 C.F.R. § 172.836, Polysorbate 60; 21 C.F.R. § 172.838, Polysorbate 65; 21 C.F.R. § 172.840, Polysorbate 80.

37.    These synthetic ingredients are derived from ethoxylated sorbitan, a derivative of sorbitol, then esterified with fatty acids and exist as oily liquids.

38.    While often classified as emulsifiers, additives which help mix two substances that typically separate when they are combined, they perform a preservative function in dairy products.

39.    The Product consists of an oil-in-water artificial cream emulsion.

40.    Such emulsions are prone to physical instability such as gravitational separation, foculation and coalescence, especially when exposed to environmental stresses like freeze and thaw cycles.

41.    The functionality provided by these polysorbate preservatives in the production of the Product reduces yield loss in the production process and improves quality and shelf-stability.

42.    Since the Product is frozen and based on dairy ingredients, it is especially

important to ensure microbiological stability.

43. This is because dairy ingredients have a relatively high moisture content, making them prone to the growth of bacteria, microbes and other pathogens.

44. This can be exacerbated where a pie or its constituents are subject to time-temperature abuse, such as thawing, freezing, and being held for extended periods at refrigeration or room temperature.

45. The use of the phosphate salt preservatives and the polysorbate preservatives in the Product optimizes its stability.

46. The addition of the synthetic preservatives ensures that if any undesirable organisms survive, the pie remains safe to eat if consumed within a reasonable amount of time.

47. First, the phosphate salt preservatives act as buffering agents to maintain the Product's constant pH level, preventing batch-to-batch inconsistencies.

48. The result of a stable pH means the Product will last longer than it otherwise would because it will be more stable.

49. Second, the phosphate salt preservatives act as chelating agents in the Product by removing traces of heavy metals.

50. The removal of traces of heavy metals prevents the Product's premature oxidation.

51. The result is that the Product's shelf life is increased, and its original

9

taste, color and appearance are maintained.

52.   Third, the phosphate salt preservatives act as acidulants in the Product.

53.   Their addition increases the Product's acidity, thereby lowering their pH.

54.   This creates conditions which inhibit microbial spoilage from bacteria, yeasts, and molds.

55.   Such ingredients protect dairy-based foods like the Product against spoilage and growth of pathogenic organisms, according to a senior scientist with Chr. Hansen Inc., a Danish dairy conglomerate with locations in the United States.

56.   This is because as the pH of the Product drops, the ability of spoilage and pathogenic organisms to grow and produce toxins decreases.

57.   The result is that the Product is preserved by remaining stable and consumable for longer periods after being made.

58.   Fourth, the phosphate salt preservatives act as antimicrobial agents in the Product.

59.   These limit the growth and production of toxic molds such as Aspergillus parasiticus, A. versicolor, and other harmful bacteria.

60.   Fifth, the phosphate salt preservatives act as antioxidants in the Product.

61.   Antioxidants are oxygen scavengers that prevent oxidation.

62.   By using the phosphate salt preservatives, the Product is protected against free oxygen which would otherwise cause it to spoil prematurely, thereby

10

Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 13 of 24

preserving it and allowing it to remain consumable for a longer period.

63. Sixth, the phosphate salt preservatives prevent discoloration in the Product.

64. This means, for instance, the Product retains its dark, chocolate natural color longer, appearing fresher than it otherwise would had it not included these chemical ingredients.

65. Though the Product is required by federal and identical state law to disclose the presence of these chemical preservatives in a manner likely to be read by consumers, it fails to do so. 21 C.F.R. § 101.22(c).

66. The front label of the Product containing the statement of "No Preservatives" is misleading because it contains chemical preservatives which function to preserve the pie.

67. The front label of the Product containing the statement of "No Preservatives" is misleading because it fails to disclose its chemical preservatives in a way that consumers are likely to read under customary conditions of purchase and use.

68. This includes failing to indicate the function of these chemical preservatives on their ingredient lists.

69. This includes failing to indicate the function of these chemical preservatives on their ingredient lists.

70.   Consumers who view the ingredient lists are not told that these chemical ingredients are preservatives and function as preservatives.

71.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $6.19 per 25.5 oz (722 g) for one pie, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

72.   Plaintiff is a citizen of New York.

73.   Defendant is a citizen of Minnesota.

74.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from thousands of retail stores, including grocery stores, drug stores, big box stores, warehouse club stores, convenience stores, bodegas, specialty grocery stores and/or online in this State and online to citizens of this State.

75.   Defendant transacts business in New York, through the sale of the Product to consumers within New York from thousands of retail stores, including grocery stores, drug stores, big box stores, warehouse club stores, convenience stores, bodegas, specialty grocery stores and/or online in this State and online to citizens of this State.

12

76. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

77. Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

78. Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

79. Venue is in this Court because Plaintiff is a resident of New York County.

80. Venue is in this Court because a substantial part of the events or omissions giving rise to these claims occurred in New York County, which is where Plaintiff's causes of action accrued.

81. Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in New York.

82. Plaintiff became aware the labeling was false and misleading in New York County.

## PARTIES

83. Plaintiff Cassandra Thompson is a citizen of New York County, New York.

84. Defendant Schwan's Consumer Brands, Inc., is a Georgia corporation with a principal place of business in Minnesota.

85. Defendant manufactures and markets Edwards frozen pies, known for the highest qualities and the finest ingredients.

86. Upon information and belief, the front labels on the pies no longer state, "No Preservatives."

87. However, the chemical preservatives are still not identified as required on the ingredient list.

88. The Edwards pies include key lime, strawberry crème, cheesecake, chocolate crème and turtle crème.

89. Plaintiff purchased the chocolate crème pie between October 2020 and 2022, at grocery stores, convenience stores, big box stores, drug stores, specialty food markets, and/or warehouse club stores within New York.

90. Plaintiff is like most consumers and tries to avoid consuming food and beverages with preservatives based in part on the belief that they are potentially harmful, not natural and unhealthy.

91. Plaintiff read and relied on the front label statement of "No Preservatives" to believe and expect the Product did not have chemical preservative ingredients and/or chemical ingredients which did not perform preservative functions.

92. Plaintiff did not expect that the Product contained preservatives and chemical preservatives.

93. Plaintiff bought the Product at or exceeding the above-referenced price.

94. Plaintiff paid more for the Product than she would have had she known it did contain preservatives, which were chemical preservatives, as she would not have bought it or would have paid less.

95. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

96. Plaintiff seeks to represent the following class:

> All persons in the State of New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

97.  Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

98.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

99.  Plaintiff is an adequate representative because her interests do not conflict with other members.

100.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

101.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

103.  Plaintiff incorporates by reference paragraphs 1-71.

104.  The purpose of the GBL is to protect consumers against unfair and deceptive practices.

105.  The labeling of the Product violated the GBL because the representation

16

of "No Preservatives" when it contained chemical preservatives was unfair and deceptive to consumers.

106. Plaintiff believed the Product did not contain chemical preservatives.

107. Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that it contained chemical preservatives.

108. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

109. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

110. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### AGM § 201

111. Plaintiff incorporates by reference paragraphs 1-71.

112. Defendant made misrepresentations and omissions of material fact, by misbranding the Product, through the misleading labeling that it had "No Preservatives."

17

113. The labeling of the Product violated the AGM because the representation it had "No Preservatives" when it contained chemical preservatives was contrary to law, because this State adopted the FFDCA and accompanying regulations.

114. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food.

115. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

116. Defendant knew its statements and omissions were false and/or misleading.

117. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

118. Plaintiff and class members did in fact rely upon these statements.

119. Reliance was reasonable and justified because of Edwards' reputation as a household name, honestly marketed to consumers.

120. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product and the premium amount paid.

### COUNT III
### Breach of Express Warranty

121. Plaintiff incorporates by reference paragraphs 1-71.

122. The Product was manufactured, identified, marketed, and sold by

18

Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 21 of 24

Defendant and expressly warranted to Plaintiff and class members that it did not contain preservatives, specifically, chemical preservatives.

123. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and/or targeted digital advertising.

124. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods without chemical preservatives, and developed its marketing and labeling to directly meet those needs and desires.

125. Defendant's representations affirmed and promised that the Product did not have chemical preservatives.

126. Defendant described the Product so Plaintiff and consumers believed it did not have chemical preservatives, which became part of the basis of the bargain that it would conform to its affirmations and promises.

127. Plaintiff recently became aware of Defendant's breach of the Product's express warranty.

128. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and/or their employees.

129. Plaintiff hereby provides notice to Defendant that it breached the Product's express warranty.

130. Defendant received notice and should have been aware of these issues

19

due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

131. The Product did not conform to its affirmations of fact and promises due to Defendant's actions, because it contained chemical preservatives.

132. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: September 20, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

20

Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 23 of 24

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates, P.C.

*Counsel for Plaintiff*

Case 1:24-cv-00831-CM   Document 1-1   Filed 02/05/24   Page 24 of 24

ATTORNEY(S) : Sheehan & Associates, P.C.
INDEX # : 159215/2023
PURCHASED/FILED : September 20, 2023
STATE OF : New York
COURT : Supreme
COUNTY/DISTRICT : New York

## AFFIDAVIT OF SERVICE - SECRETARY OF STATE

Cassandra Thompson, individually and on behalf of all others similarly situated

Plaintiff(s)

against

Schwan's Consumer Brands, Inc.

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY )SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:**    Approx. Age:  60 yrs

Weight:  120 lbs   Height:  5' 1"   Sex: Female   Color of skin:  White

Hair color:  Brown   Other:

**Holly Atkins**_____, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **January 4, 2023**, at **1:23 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:
**Summons and Class Action Complaint with Notice of Electronic Filing ( Mandatory Commencement Case )**

on

**Schwan's Consumer Brands, Inc.**

the Defendant in this action, by delivering to and leaving with _____**Nancy Dougherty**_____

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of _____$40_____ dollars; That said service was made pursuant to Section **BUSINESS CORPORATION LAW §306**.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Sworn to before me on this
5th day of January, 2024.

ROBERT GUYETTE
Notary Public State of New York
01GU6382699 RENSSELAER COUNTY
Commission Expires OCTOBER 29, 2026

Holly Atkins
Invoice·Work Order # 2400312
Attorney File # **Thompson**

1 of 1