UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/19/24
```

CASSANDRA THOMPSON, Individually, and On Behalf of All Others Similarly Situated,

                        Plaintiff,

-against-

SCHWAN'S CONSUMER BRANDS INC.,

Defendant.

24-cv-00831 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

This case concerns the frozen chocolate crème pies sold by Defendant Schwan's Consumer Brands, Inc. ("Schwan's"). Plaintiff Cassandra Thompson ("Plaintiff") alleges that the pies' "NO Preservatives" label is false and misleading because the product in fact contains preservatives.

Schwan's moves to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

### BACKGROUND

Below is a summary of the allegations in the Complaint. For purposes of this motion they are presumed to be true.

1

I.   The Product

Schwan's is a frozen food company that sells its products in retail stores throughout New York. (Compl. ¶¶ 74, 84). One of its product offerings is the Edwards frozen chocolate crème pie (the "Product"), a frozen pie composed of a cookie crust, chocolate and vanilla crème filling layers, and a topping of chocolate drizzle, chocolate chips, and whipped crème rosettes. *Id.* at ¶1. The Product's packaging represents that the Product has "**NO Preservatives.**" *Id.*

The Product uses an oil-in-water artificial cream emulsion. These types of emulsions are prone to physical instability, especially when exposed to environmental stresses, e.g., freeze and thaw cycles. *Id.* at ¶¶ 39-40. Additionally, since the Product contains dairy ingredients, it has a relatively high moisture content, making it prone to the growth of bacteria, microbes and other pathogens. *Id.* at ¶¶ 42-44. This tendency can be exacerbated when the Product is subject to thawing, freezing, or being held for extended periods at refrigeration or room temperature. *Id.* at ¶44.

As a means to combat these two aforementioned issues, the Product contains sodium pyrophosphate ("SAPP"), sodium tripolyphosphate ("STPP"), and polysorbates 60, 65, and 80 (collectively, the "Accused Ingredients"). *Id.* at ¶24. The Accused Ingredients improve the Product's physical stability and ensure that the pie remains safe to eat if consumed within a reasonable amount of time. *Id.* at ¶46.

II.   The Ingredients

*The Phosphate Salts*

SAPP and STPP are categorized as phosphate salts, which are produced by chemical reactions involving the neutralization of phosphoric acid. *Id.* at ¶¶25-26 (citing 40 C.F.R. § 116.4).

2

SAPP is added to foods to protect dairy proteins from heat dehydration, to stabilize fat emulsions, and to preserve freshness. SAPP is classified by the FDA as a "sequestrant." Sequestrants are food additives that improve the quality and stability of foods by forming chelate complexes with polyvalent metal ions, which prevents the oxidation of fats in food and keeps it fresh for longer. *Id.* at ¶¶28-30, 33; 21 C.F.R. § 182.6787. According to Plaintiff, all sequestrants are "preservatives." *Id.* at ¶31.

STPP is classified by the FDA as a Multiple Purpose GRAS Food Substance. 21 C.F.R. § 182.1810. If a food item contains STPP, the FDA requires that companies both declare it as a preservative on the product's ingredient list and disclose the STPP's function, e.g., to preserve moisture. (Compl. ¶35).

SAPP and STPP (the "Phosphate Salts") perform six relevant preservative functions within the Product.

First, the Phosphate Salts maintain the Product's pH level, thereby elongating the Product's shelf life. *Id.* at ¶¶47-48.

Second, the Phosphate Salts act as chelating agents by removing traces of heavy metals from the Product. The removal of traces of heavy metals prevents the Product's premature oxidation, which increases the Product's shelf life and causes the Product to maintain its original taste, color and appearance for longer. *Id.* at ¶¶49-51.

Third, the Phosphate Salts act as acidulants in the Product, which inhibits microbial spoilage from bacteria, yeasts, and molds, thereby elongating the Product's shelf life. *Id.* at ¶¶52-57.

Fourth, the Phosphate Salts act as antimicrobial agents in the Product, which limit the growth and production of toxic molds. *Id.* at ¶¶58-59.

3

Fifth, the Phosphate Salts act as antioxidants in the Product, thereby protecting the Product against oxygen which would otherwise cause the Product to spoil prematurely. *Id.* at ¶¶60-62.

Sixth, the Phosphate Salts prevent discoloration in the Product, allowing the Product to retain its dark, chocolate natural color longer, thus appearing fresher than it otherwise normally would. *Id.* at ¶¶63-64.

*The Polysorbates*

The polysorbates included in the Product – polysorbates 60, 65, and 80 – are multipurpose additives. 21 C.F.R. §§ 172.836, 172.838, and 172.840. These additives help to mix two substances that typically separate when they are combined. (Compl. at ¶38). These polysorbates also reduce yield loss in the Product's production process and improve the quality and shelf-stability of the Product. *Id.* at ¶41.

III.  The Claims

All of the Accused Ingredients are listed under the Product's "ingredients" list on its packaging. However, the Product's packaging also states that the Product has "**NO** Preservatives."

Plaintiff Cassandra Thompson ("Plaintiff") is a New York citizen who purchased the Product between October 2020 and 2022, at stores within New York. (Compl. at ¶¶83, 89). Plaintiff tries to avoid consuming food and beverages with preservatives based in part on her belief that they are unnatural and unhealthy. *Id.* at ¶90. Unsurprisingly, because of the Product's "**NO** Preservatives" label, Plaintiff expected the Product to not contain preservatives. *Id.* at ¶¶91-92.

Plaintiff now alleges that Schwan's "NO Preservatives" label is false and misleading because the Product contains the Accused Ingredients which "perform preservative functions in the food." *Id.* at ¶38. Plaintiff also alleges that Schwan has violated its duties under federal and

4

state law to disclose the presence of these Accused Ingredients and indicate their function in manners likely to be read by consumers.

According to Plaintiff, as a result of the Product's allegedly false and misleading representations, the Product is sold at a premium price, approximately $6.19 for one pie, which is higher than the price for similar products, and higher than the Product would be sold absent its misleading representations and omissions. *Id.* at ¶75. Plaintiff also claims that – had she known the Product contains preservatives – she would have either only been willing to purchase the Product for less than $6.19 or not purchased the Product at all. *Id.* at ¶94.

IV.   Procedural History

On September 17, 2023, Plaintiff, on behalf of herself and others similarly situated, filed a putative class action complaint in the Supreme Court of the State of New York, County of New York. *Cassandra Thompson v. Schwan's Consumer Brands, Inc.*, Index No. 159215/2023 (N.Y. Sup. Ct. New York Cnty.). The Complaint asserts claims under New York General Business Law ("GBL") §§ 349 and 350, New York's Agriculture and Markets Law ("AGM") § 20, and under New York state law for breach of express warranty. Additionally, Plaintiff seeks to represent the following class: "All persons in the State of New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged." (Compl. at ¶96).

On February 5, 2024, Schwan's removed the state court action to this court under 28 U.S.C. § 1332(d) (the "Class Action Fairness Act" or "CAFA"). Plaintiff did not contest removal.

On March 6, 2024, Schwan's filed a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the Complaint fails to state a claim upon which relief can be granted. For the following reasons, Schwan's motion is GRANTED in part and DENIED in part.

5

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012) (internal quotation marks omitted).

Under New York law, in order to state a claim for breach of express warranty, a plaintiff must allege "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F.Supp.2d 601, 625 (S.D.N.Y.2012). Under New York Uniform

Commercial Code Law § 2–313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." Generalized statements by the defendant, however, do not support an express warranty claim if they are "such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hubbard v. General Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (internal quotations omitted).

## DISCUSSION

Schwan's argues that Plaintiff's claims should be dismissed because: (1) there is no private right of action under New York's Agriculture and Markets Law; and (2) Plaintiff has not pled that Accused Ingredients are preservatives, either as a matter of law or as understood by a "reasonable consumer."

### A. Plaintiff's New York Agriculture and Markets Law Claim is Dismissed with Prejudice

Schwan's argues that Plaintiff's claim under New York's Agriculture and Markets Law must be dismissed as there is no private civil right of action for breaches of its provisions. Plaintiff does not dispute Schwan's argument and notes in her opposition that she "withdraws her claim for violations [of] New York's Agriculture and Markets Law." (Dkt. No. 14 at 6).

Schwan's is correct. AGM § 32 makes clear that New York's Commissioner of Agriculture and Markets, not individual plaintiffs, has the sole right to investigate and bring such actions under the AGM. *See Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020).

Accordingly, Plaintiff's claim under New York's Agriculture and Markets Law is dismissed with prejudice.

7

B. **Plaintiff Has Adequately Pleaded that the Accused Ingredients Are Preservatives**

Schwan's next argues that the remaining claims must be dismissed because Plaintiff has not adequately pleaded that the Accused Ingredients are "preservatives," since the Complaint incorrectly defines that term as a matter of law.

The Complaint alleges that "Preservatives are ingredients added to food that are capable of and tend to prevent or slow its deterioration." It further alleges that, "This [i.e., preventing or slowing deterioration] includes maintaining or improving [the] safety, freshness, nutritional value, taste, texture, and appearance" of food. (Compl. ¶¶3-4). Schwan's argues that, while this first part of the definition is correct, the subsequent inclusion of ingredients that improve the "safety, freshness, nutritional value, taste, texture, and appearance" of food improperly expands the definition of "preservatives."

Schwan's is correct. Preservatives prevent deterioration. That is what they do. That is all they do. Something that prevents deterioration might also make something taste better, but that is not a function of its preservative character – it is a product of its flavor. An ingredient that does not prevent deterioration but that makes something taste better would qualify as a preservative under the plaintiff's second proposed definition, and that is wrong, as a matter of common sense.

The FDA – the federal regulatory body that controls food and drug content – has defined the term "preservative." That definition can be found in 21 C.F.R. § 101.22(a)(5): Preservatives are ingredients "when added to food, [that] tend[] to prevent or retard deterioration." The FDA also exempts certain things that have for centuries been used as "preservatives" from the regulatory definition of "preservative," saying that its definition of "preservative": "does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." Based on the Complaint, none of these exclusions applies in the instant case.

8

As no agency other than the FDA sets standards for food content and labeling, the FDA's definition of what constitutes a preservative is the definition we will use to define the term for purposes of this lawsuit – which means that if an ingredient does not prevent deterioration, it is not a preservative. The fact that an ingredient might also perform some other function, such as make things taste better, does not make it a preservative for regulatory purposes. Preventing deterioration is what makes an ingredient a preservative. Period. End of story.

However, the fact that Plaintiff has tried to expand the definition of "preservative" does not necessarily warrant dismissal of her claims. The question remains: does Plaintiff plead facts from which a reasonable trier of fact could conclude that the Accused Ingredients qualify as preservatives under the FDA's definition, which Schwan's argues is the correct definition?

The answer to that question is yes.

The Complaint adequately alleges that the Accused Ingredients satisfy the FDA's definition, *i.e.*, that the Accused Ingredients "tend to prevent or slow [the Product's] deterioration," which Schwan's agrees is the proper definition of "preservative." Specifically, the Complaint alleges that the Phosphate Salts perform six separate preservative functions that "slow [the Product's] deterioration," e.g., stabilizing pH levels, preventing premature oxidation, increasing acidity, inhibiting the growth of bacteria, yeasts, and molds, and allowing the Product to retain its original coloring. (Compl. at ¶¶47-64). Additionally, the Complaint alleges that the polysorbates ingredients improve the shelf-stability of the Product. *Id.* at ¶41. All of this indicates that the Complaint pleads that the Accused Ingredients retard the deterioration of products – they "preserve" products.

Moreover, while the FDA has decreed that certain things that extend the useful life of products and prevent deterioration (salt, vinegar, citrus) are not preservatives for regulatory

9

product content purposes – even though these substances have been used for centuries for that purpose – the Accused Ingredients do not appear among these exclusions in the Code of Federal Regulations. Indeed, the Complaint alleges that at least one of them – STPP – is expressly designated as a "preservative" by the FDA. Compl. ¶35. Therefore, the Complaint sufficiently pleads its GBL and breach of warranty claims.

Schwan's next argues that Plaintiff has failed to plead claims for breach of warranty and violation of GBL §§ 349 and 350, because Plaintiff has not "plausibly allege[d] that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements on the label at issue." *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594, at *11 (E.D.N.Y. Feb. 13, 2020) (quoting *Jessani v. Monini N. Am.*, Inc., 744 F. App'x 18, 19 (2d Cir. 2018)).

That is incorrect. The Complaint alleges that the Product's packaging declares that it contains "NO Preservatives," and Plaintiff alleges that the Product contains preservatives. If indeed the Product contains preservatives, a reasonable consumer might well be misled by the Product's packaging, with its emphasis on the word NO.

Schwan's next argues that no "reasonable consumer" would believe a preservative is an ingredient that "maintain[s] or improv[es] [the] safety, freshness, nutritional value, taste, texture, and appearance" of food. However, I have dispensed with any arguments predicated on Plaintiff's expanded definition of the term "preservative." Limiting ourselves to the parameters of the FDA's definition of the term, the Complaint alleges that a "reasonable customer" would consider an ingredient that "tend[s] to prevent or slow [the Product's] deterioration," to be a "preservative." As discussed above, Plaintiff has adequately pled that all of the Accused Ingredients fit this definition of "preservative."

Accordingly, Plaintiff has adequately pled that the Product's label could be "materially misleading" to reasonable consumers who expected the Product to not contain preservatives based on its labeling.

Finally, Schwan's asserts that, "Plaintiff must plead, with some basis, that [the Accused Ingredients] are not included to make the Product an excellent chocolate crème pie on day one." (Dkt. No 11 at 7). Schwan's offers no reason why the law imposes such a pleading requirement, which is understandable, because there is no such pleading requirement. Plaintiff's claims are not predicated on any assertion that the pie is not a good pie, whether on day one or on any subsequent day. They are predicated on the "NO Preservatives" legend on the product's label.

## C. Schwan's Remaining Arguments Raise Purely Factual Disputes

Schwan's remaining arguments all dispute whether the Accused Ingredients can be classified as preservatives as a matter of fact. For example, Schwan's argues that (1) the Accused Ingredients cannot perform "preservative functions" because the Product exclusively uses freezing temperatures to preserve itself; (2) freezing temperatures would arrest any preservative functions the Accused Ingredients have; and (3) the scientific functions performed by the Accused Ingredients are not in fact "preservative" in nature.

There may be many reasons why the "preservatives" identified by Plaintiff are not "preservatives" within the meaning of the FDA's definition (though I have a hard time seeing how that could be the case with STPP). But whether a particular product identified by Plaintiff qualifies as a "preservative" is an issue of fact to be litigated – not a reason to dismiss the complaint at the pleading stage. The purported scientific "pleading" issues Schwan's raises, (e.g., regarding the effect of the phosphate ingredients on the Product's pH level, whether sodium tripolyphosphate is indeed an acid, and the chemistry of chelate complexes) are matters to be resolved at trial, no doubt with the aid of expert witnesses.

## CONCLUSION

For the reasons discussed above, the motion to dismiss is **GRANTED** as to Plaintiff's claim under New York's Agriculture and Markets Law, and **DENIED** as to all other claims.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of Court is respectfully directed to terminate the motions at Docket Number 11.

Dated: August 19, 2024
       New York, New York

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL